EMIL ROECK v. OLAF I. HALVORSON.
OLAF I. HALVORSON v. EMIL A. ROECK,
ADMINISTRATOR OF ESTATE OF HENRY T. ROECK.

95 N. W. (2d) 172.

February 27, 1959—Nos. 37,569, 37,570.

*I. L. Swanson,* for appellant.

*Rosengren, Rufer & Blatti* and *Bauers, Pratt, Cragg & Barnett,* for respondent.

FRANK T. GALLAGHER, JUSTICE.

Appeal from order of the district court denying motion for a new trial.

These cases arose out of a collision which occurred on May 1, 1957, at approximately 1:50 p. m. on Trunk Highway No. 55 between a tractor hauling a hayrack, owned and driven by Henry Roeck, and a 1955 Lincoln automobile, owned and driven by Olaf Halvorson. Both drivers were injured and Roeck died on May 6, 1957, as a result of the injuries. The tractor and automobile were damaged.

Just prior to the collision Halvorson and Roeck were proceeding westerly on Trunk Highway No. 55, a straight two-lane road running east and west. The day was overcast but visibility was good. Halvorson was 800 to 1000 feet behind Roeck and proceeding at from 40 to 50 miles an hour. Roeck was traveling from 12 to 15 miles an hour. They were approaching a public crossroad running north and south although the crossroad was not marked by any signs on the highway.

Halvorson blew his horn and turned into the left lane to pass Roeck. As Halvorson came alongside the hayrack, Roeck turned south into the left lane to make a left turn onto the gravel crossroad. There is some dispute as to how far the parties were from the intersection at the time Halvorson proceeded alongside and Roeck started the left turn. However, the deputy sheriff investigating the accident indicated that there were skid marks from Halvorson's car starting 150 feet back from the intersection on the south shoulder. Halvorson testified that as soon as he was aware of Roeck's turning he applied the brakes and moved over to the left shoulder. He then thought he might be able to go around Roeck so he released the brakes. He abandoned this possibility and collided with the left rear axle of Roeck's tractor, which was then facing in a southwesterly direction in the left lane. There is no dispute that the impact occurred at the intersection.

Shortly after the accident, Roeck stated to witnesses that he had turned too sharp, hadn't looked, and had made no signal for a left-hand turn.

One of the actions involved in this appeal was for recovery of damages for the wrongful death of Henry Roeck and was brought by Emil Roeck as trustee against Halvorson. The trustee claimed that Halvorson was negligent in the operation of his car, which claim was denied by Halvorson. The other action was brought by Halvorson against the administrator of Roeck's estate for personal injuries and property damage, and it was claimed therein that Roeck was negligent. This claim was denied by the administrator, who presented a counter-claim for damages to the tractor. The actions were consolidated for trial. The jury found for Halvorson in the wrongful death action and also in his action against the estate and assessed his damages at $1,600.

The administrator of Roeck's estate appeals and assigns four basic errors: (1) That the verdict is contrary to law and is not sustained by the evidence; (2) that the trial court erred in giving the jury instructions relative to the emergency rule; (3) that the trial court erred in its instruction relative to the presumption of due care on the part of the deceased, pursuant to M. S. A. 602.04; and (4) that the trial court erred in failing to instruct relative to the duties imposed by § 169.14, subd. 1, which requires reasonable speed, and subd. 3, which requires

a reduced speed when approaching and crossing an intersection and under certain other circumstances.

■ With reference to the contention that the verdict is contrary to law and is not sustained by the evidence, appellant argues that Halvorson violated § 169.18, subd. 5(b), which prohibits passing while traversing any intersection, and that pursuant to § 169.96 such violation is prima facie evidence of negligence. Further, appellant claims that in Borris v. Cox, 245 Minn. 515, 73 N. W. (2d) 372, it was decided that such a violation constitutes negligence as a matter of law (1) if there is no evidence to show an excuse or justification for the violations, or (2) if there is no evidence that the violation is based on a reasonable assumption that it did not endanger any person entitled to the protection of the act. It is appellant's claim that there is an absence here of either type of evidence.

We are of the opinion that there was evidence tending to show an excuse for the violation. Halvorson testified that grass covered part of the culverts which ran along the highway and that he had not noticed them; also there was testimony that there was water in the ditch. In addition there were no signs indicating an intersection other than a railway crossing sign to the north of Highway No. 55 on the gravel road, indicating the junction of the railroad which ran parallel to the highway. There were no mailboxes or corner fence posts which would normally indicate an intersection.[1] Where a party has violated a statute, which violation is prima facie evidence of negligence, if there is evidence tending to show excuse or justification, the question of whether the violation constitutes negligence is for the jury. Konkel v. Erdman, 254 Minn. 307, 95 N. W. (2d) 73; Thomas v. Mueller, 251 Minn. 470, 88 N. W. (2d) 842; Becklund v. Daniels, 230 Minn. 442, 42 N. W. (2d) 8. It is therefore our opinion that the issue of Halvorson's negligence in passing at the intersection was properly submitted to the jury and that the verdict was sustained by the evidence.

---

[1] These items were present in Dreyer v. Otter Tail Power Co. 205 Minn. 286, 285 N. W. 707, 287 N. W. 13, where we held that a driver could not absolve himself from the violation of the statute by contending that he had not seen the intersection because in the exercise of his duty to discover what lay ahead he could not fail to observe the crossroad.

■ The trial court instructed the jury on the emergency rule but stated that it should not be applied if the jury found that the emergency was created by the negligence of Halvorson. Appellant claims that it was error for the trial court to instruct on the emergency rule at all giving as his reasons, among other things, that it was obvious that the predicament Halvorson found himself in was either caused by the speed he was traveling or his attempt to pass within a restricted zone; and also because there was no claim that Halvorson did not use the best and safest way, under the circumstances, in his attempt to escape.[2] As we have previously stated, Halvorson's negligence was an issue properly for the jury, and where the evidence is such that a jury may find either way on the question of whether a party has created an emergency, it is proper to instruct the jury on the emergency rule with directions that it is to be applied only if the jury finds that the emergency was not created by the one who seeks to invoke the rule. Minder v. Peterson, 254 Minn. 82, 93 N. W. (2d) 699.

We cannot agree with appellant's other contention that there was no question as to whether Halvorson chose the best and safest way in his attempt to escape. It appears to us that there may have been another alternative available. He could, for example, have continued to apply the brakes rather than release them and attempt to go around the tractor. We are not prepared to say that this may not have been a safer procedure than the one he ultimately chose. In view of the foregoing, it was not error to instruct the jury on the emergency rule.

■ With reference to the instructions given relative to the presumption of due care, § 602.04 provides:

"In any action to recover damages for negligently causing the death of a person, it shall be presumed that any person whose death resulted from the occurrence giving rise to the action was, at the time of the commission of the alleged negligent act or acts, in the exercise of due care for his own safety. The jury shall be instructed of the existence of

---

[2]In Bakken v. Lewis, 223 Minn. 329, 26 N. W. (2d) 478, we held that it was not error to refuse to instruct the jury as to the emergency rule because, under the facts and circumstances there, the defendant had chosen the best and safest way in his attempt to escape.

such presumption, and shall determine whether the presumption is rebutted by the evidence in the action."

In order to understand the intent and purpose of this statute it is necessary to examine the law prior to its passage. Prior to Ryan v. Metropolitan Life Ins. Co. 206 Minn. 562, 289 N. W. 557, we held that the presumption was of an evidentiary nature. See, Aubin v. Duluth St. Ry. Co. 169 Minn. 342, 211 N. W. 580. However, in the Ryan case we held that this presumption was merely a procedural device which shifts the burden of going forward with the evidence. While we had held that the giving of instructions relative to the performance of due care in wrongful death actions, although technically incorrect, did not result in reversible error (Lang v. Chicago & N. W. Ry. Co. 208 Minn. 487, 295 N. W. 57), in TePoel v. Larson, 236 Minn. 482, 53 N. W. (2d) 468, it was declared to be error to instruct the jury with respect to such a presumption because it was only procedural in nature. In view of the foregoing it appears to be the intent of the legislature to restore the evidentiary conception of the presumption as it existed prior to the Ryan and TePoel decisions.

Pursuant to § 602.04, the trial court instructed the jury as follows:

"* * * Now, that [statute] creates a so-called presumption of due care on the part of the deceased, Henry Roeck. The presumption merely means this, if there were no evidence to oppose it, then you could not find Henry Roeck negligent. But in this case there is evidence opposing or rebutting the presumption. If you believe the evidence in this case that Henry Roeck violated the statute with reference to failure to signal or the statute with reference to the manner in which a left turn should be made, or if you find from the evidence that he violated his duties as the Court has explained them to you, what his duties consisted of as of that of all drivers on the highway, namely, the duty to exercise due care, then the presumption is rebutted and it no longer has any part in this case and should not be considered by you any further in any respect. It has then no further force whatsoever."

It is not disputed that Roeck failed to signal for a left turn, therefore appellant contends that the instruction amounts to a finding as a matter of law that the presumption has been rebutted. He further claims

that such an instruction is precluded in all cases because of the provisions of § 602.04 that the jury shall be instructed as to the existence of such presumption and shall determine whether the presumption is rebutted by the evidence in the action. We cannot agree with such a limited construction of the statute as it appears that to do so would render that statute unconstitutional as constituting a deprivation of judicial power granted by the constitution. In Zimmerman v. Chicago & N. W. Ry. Co. 129 Minn. 4, 6, 151 N. W. 412, 413, this court stated: "* * * the Constitution invests courts with the authority to determine whether or not the evidence adduced at a trial proves a cause of action or defense * * *." See, also, People v. McMurchy, 249 Mich. 147, 228 N. W. 723; Annotation, 29 A. L. R. 1287. It is not only within the power of the court but in appropriate cases it is the duty of the court to make a determination of the issues as a matter of law. Kolatz v. Kelly, 244 Minn. 163, 69 N. W. (2d) 649. While we cannot say that every violation of a driver's general duty to exercise the care of ordinarily prudent persons is sufficient to warrant a finding as a matter of law that the presumption of due care on the part of a decedent in an action for his wrongful death is rebutted, it is our opinion here that the undisputed facts that Roeck had failed to signal for a left turn, had not looked, and had turned too sharp were sufficient to justify a finding that the presumption of due care had been rebutted. Under these circumstances we find no error in the trial court's instruction.

■ The final error claimed by appellant is that the trial court erred in not instructing the jury with respect to § 169.14, subd. 1, which provides that a vehicle shall be operated at a reasonable speed considering the actual and potential hazards, and shall be restricted as is necessary to avoid colliding with any other vehicle on or entering the highway in compliance with legal requirements and his duty to use due care; also with respect to § 169.14, subd. 3, which requires, in part, appropriate reduced speed, consistent with the requirements, when crossing an intersection or when special hazards exist with respect to other traffic.

Under the facts here it is conceded that the lawful speed limit upon the highway was 60 miles per hour. The only direct evidence of Halvorson's speed is his testimony that he was proceeding at a lawful speed of

from 40 to 50 miles per hour. Appellant contends that § 169.14, subd. 1, is applicable even though Halvorson's speed was lawful with respect to the speed limit because it may have been unlawful with respect to the potential hazards. Appellant claims that the possibility that the tractor would turn left constituted a potential hazard of which Halvorson should have been aware. Normally a motorist has a right to assume that the driver of another vehicle will comply with highway regulations. Mottinger v. Halfman, 247 Minn. 115, 76 N. W. (2d) 689. In the instant case Halvorson had a right to assume that Roeck would not turn left unless he signaled. Consequently, passing the tractor would not present a potential hazard or an actual hazard until the tractor driver had signaled to turn left, which Roeck had not done in this case. Therefore the circumstances could not justify an inference of negligence based on excessive speed considering the actual and potential hazards.

In regard to § 169.14, subd. 3, we are of the opinion that under the circumstances—the absence of traffic approaching from the north or south; clear visibility; and, as we have stated previously, the absence of potential or actual hazard—Halvorson's speed did not justify an inference of negligence based on excessive speed in approaching and crossing the intersection. Therefore it was proper to refuse the instruction. See, Bruno v. Belmonte, 252 Minn. 497, 90 N. W. (2d) 899.

In view of the foregoing we believe that it was not error to fail to instruct relative to § 169.14, subds. 1 and 3.

Affirmed.

MR. CHIEF JUSTICE DELL took no part in the consideration or decision of this case.