Bernard P. PRICE, et al., Respondents,

v.

James AMDAL, Special Administrator of
the Estate of Ira Iverson,
Deceased, Respondent.

Herbert DIEDRICH, et al., Respondents,

v.

Bernard P. PRICE, Respondent.

James AMDAL, Special Administrator of
the Estate of Ira Iverson,
Deceased, Respondent,

and

Fern Iverson, as Trustee for the Heirs of
Ira Iverson, Deceased, Appellant,

v.

Bernard P. PRICE, Respondent.

No. 46704.

Supreme Court of Minnesota.

June 10, 1977.

Wallace, Hegg & Reif, and Robert M. Hegg, Alexandria, for appellant.

Rufer, Hefte, Pemberton, Schulze & Sorlie, and Gerald S. Rufer, Fergus Falls, for Price et al.

Cousineau, McGuire, Shaughnessy & Anderson, and Henry A. Cousineau, Minneapolis, for Amdal.

MacLAUGHLIN, Justice.

This is an appeal by the trustee for the heirs of the deceased driver of an automobile from an order of the district court denying consolidation of three cases arising from a two-car collision.[1] The surviving driver had argued that the cases be tried separately and in the sequence in which they had been filed unless the trustee would agree to waive her right to the mandatory jury instruction concerning the presumption of the decedent's exercise of due care pursuant to Minn.St. 602.04.[2]

1. An order of the trial court refusing to consolidate cases for trial is not appealable as of right, pursuant to Rule 103.03(d), Rules of Civil Appellate Procedure, but we have granted discretionary review, pursuant to Rule 105, in order to consider a troublesome and vexing question, and to expedite the determination of issues of pressing concern to all of the litigants.

2. Minn.St. 602.04 provides: "In any action to recover damages for negligently causing the death of a person, it shall be presumed that any person whose death resulted from the occurrence giving rise to the action was, at the time of the commission of the alleged negligent act or acts, in the exercise of due care for his own safety. The jury shall be instructed of the existence of such presumption, and shall determine whether the presumption is rebutted by the evidence in the action."

The three cases arose from the following undisputed facts. On March 6, 1973, a car owned and operated by Ira Iverson and a pickup truck owned and operated by Bernard Price were involved in a head-on collision in Otter Tail County. Iverson was killed as a result of the accident and Price was severely injured. Although Price was alone in his truck, there were five handicapped passengers in the Iverson car being transported to special schools. One of the passengers subsequently died and the others sustained personal injuries.

On August 29, 1974, Price, the surviving driver, brought suit against the special administrator of Iverson's estate and served and filed a note of issue, placing the case on the 1975 fall term calendar of the Otter Tail County District Court. The trustee for Iverson's heirs instituted a wrongful-death action against Price on June 5, 1975, and filed a note of issue subsequent to the filing by Price, placing the case on the same fall term calendar in Otter Tail County District Court. Bertram Diedrich, an injured passenger, and his father also brought suit against Price and against the special administrator of Iverson's estate.

In September 1975, the special administrator of Iverson's estate and the trustee for Iverson's heirs moved the district court to consolidate all the actions arising out of the two-car collision since there were common issues of law and fact. They urged that separate trials would place an undue burden on the parties, the court, and the witnesses common to each of the lawsuits. Because there were no objections raised at that time by Price's attorneys, consolidation was ordered by the trial court.

Shortly before trial, however, attorneys for Price moved for an order denying consolidation and providing that the surviving driver's suit be tried first since it was the first served and filed. In the alternative, if the cases were to be left consolidated for trial, the motion asked that the jury not be instructed of the presumption of the decedent's exercise of due care, as required pursuant to Minn.St. 602.04.

■ On the day set for trial, after hearing argument by counsel for all parties to the three lawsuits, the trial court granted the motion denying consolidation, struck the cases from the calendar, and certified the issues to this court as important, uncertain, and doubtful, stating that "the Bench and Bar of Minnesota will welcome an early resolution of the issues." Thereupon, the trustee for Iverson's heirs commenced this appeal.[3]

The following questions, some of which have previously been discussed and decided by this court, will be considered in this opinion: (1) Whether a wrongful-death action brought by the trustee for a decedent's heirs may be consolidated for trial with a survivor's negligence suit against the special administrator of the decedent's estate; (2) whether failure to consolidate cases of this nature causes undue prejudice to the survivor because of the effect of collateral estoppel on the survivor's subsequent negligence suit against the estate of the decedent when the issue of negligence of the parties has been litigated and determined in a previous wrongful-death action; (3) whether Minn.St. 602.04 is an unconstitutional denial of equal protection to survivors as a class in light of the enactment of the comparative negligence statute.

■ Before a determination of these issues, it is important to consider the history of the presumption of a decedent's exercise of due care at common law and by statute in Minnesota. At common law, in the absence of evidence to the contrary, a person is presumed to have been in the exercise of due care at the moment of his death because of his love of life and the instinct to preserve it, and this applies to a decedent, whether plaintiff or defendant in a lawsuit.

---

**3.** Rule 103.03(i), Rules of Civil Appellate Procedure, allows a trial court to certify a question to this court as important and doubtful but applies only to orders which deny a motion to dismiss for failure to state a claim upon which relief can be granted or which deny a motion for summary judgment. However, we have decided to grant discretionary review. See, footnote 1, *supra.*

In actions arising before 1957, there was no statutory presumption of a decedent's due care in Minnesota but only the common-law presumption. Prior to 1939, we considered all presumptions as evidence, to be weighed by the jury. The presumption of the decedent's due care in a wrongful-death suit was submitted to the jury unless there was competent evidence to the contrary. See, *Aubin v. Duluth Street Ry. Co.*, 169 Minn. 342, 211 N.W. 580 (1926); *Klare v. Peterson*, 161 Minn. 16, 200 N.W. 817 (1924); *Carson v. Turrish*, 140 Minn. 445, 168 N.W. 349 (1918). We decided in *Ryan v. Metropolitan Life Insurance Co.*, 206 Minn. 562, 289 N.W. 557 (1939), however, that presumptions, such as the presumption of the decedent's due care, were not evidence but mere "procedural devices" which did not shift the burden of proof but only the burden of going forward with the evidence. Although a trial court could direct a verdict for the decedent's heirs where no evidence had been introduced in rebuttal, the presumption disappeared when the trial court determined that competent evidence had been introduced to rebut it and the case went to the jury without the instruction. See, 44 Minn.L.Rev. 352.

In *TePoel v. Larson*, 236 Minn. 482, 53 N.W.2d 468 (1952), we went further and held that it was reversible error for the trial court to instruct a jury of the existence of the common-law presumption of due care where the presumption operates *against* the party having the burden of proving contributory negligence. The court said that "[t]he presumption cannot and should not be permitted to cast any greater burden upon defendant than he already has under such instructions." 236 Minn. 492, 53 N.W.2d 473.

In 1957 for the apparent purpose of preventing restrictions on a decedent's right to the presumption of due care in a wrongful-death action where the slightest evidence of his contributory negligence would bar any chance of recovery, the Minnesota Legislature enacted Minn.St. 602.04, making instruction of the presumption mandatory and requiring the jury, not the trial court, to determine whether the presumption had been rebutted by the evidence.

In cases decided after the enactment of § 602.04, we have construed the statute narrowly. In *Roeck v. Halvorson*, 254 Minn. 394, 95 N.W.2d 172 (1959), we held that the statute did not preclude a trial judge from instructing a jury, in appropriate circumstances, that, as a matter of law, the presumption of due care had been rebutted. See, *Lott v. Davidson*, 261 Minn. 130, 109 N.W.2d 336 (1961). In *Benson v. Dunham*, 286 Minn. 152, 174 N.W.2d 687 (1970), we agreed that the statutory presumption did not have to be submitted to the jury at all since the presumption had been rebutted as a matter of law, making proper a directed verdict for the defendant. See, also, *Chicago & N. W. Ry. Co. v. Strand*, 300 F.2d 521 (8 Cir. 1962); *Krafft v. Hirt*, 260 Minn. 296, 110 N.W.2d 14 (1961).

With only one exception,[4] our decisions which interpreted Minn.St. 602.04 have considered the statutory presumption as it existed with respect to the law of negligence in this state prior to 1969. We implicitly recognized the public policy behind the enactment of the statute in light of our law of contributory negligence which operated as an absolute bar to any recovery by the trustee if the decedent was found to be even slightly negligent. However, with the passage in 1969 of Minn.St. 604.01, our comparative negligence law, a trustee for the decedent's heirs was no longer precluded by contributory negligence in a wrongful-death action from recovering from a more negligent survivor, even if the negligence of the decedent was almost as great as that of the defendant. Therefore, in this decision we shall examine the constitutionality of § 602.04 as it has been affected by the passage of our comparative negligence statute.

■ 1. The first issue raised by the parties to this appeal is whether a wrongful-death action brought by the trustee for the decedent's heirs may be consolidated with

---

4. See, *Steinhaus v. Adamson*, 294 Minn. 387, 201 N.W.2d 264 (1972).

the survivor's negligence suit against the special administrator of the decedent's estate. Although a trial court ordinarily has the discretion to order consolidation of separate actions involving a common question of law or fact, pursuant to Rule 42.01, Rules of Civil Procedure, consolidation should not be ordered where confusing rules of law are applicable to the same party who may appear in different capacities in the same trial. 2 Hetland & Adamson, Minnesota Practice, Civil Rules Ann., p. 210. See, also, Note, 50 Minn.L.Rev. 479, 530.

A recognition of the differing roles of the trustee for decedent's heirs as a plaintiff and decedent's representative as a defendant because of the presumption of due care created by Minn.St. 602.04 led to this court's decision in *Lambach v. Northwestern Refining Co. Inc.*, 261 Minn. 115, 111 N.W.2d 345 (1961). Justice Oscar Knutson, concurring specially, and joined by Justices Frank Gallagher and Martin Nelson, observed that after the enactment of the statutory presumption in 1957, it was no longer possible for a trial court to instruct a jury rationally on the law of negligence if a suit against the special administrator of a decedent's estate was consolidated for trial with a wrongful-death action brought by the trustee for the same decedent's heirs.

Since a trial court is required by the provisions of § 602.04 to instruct a jury of the presumption of the decedent's due care in a wrongful-death action in which the trustee is plaintiff, but does not provide for an instruction in a suit where the representative of the decedent's estate is sued for negligence by the survivor, Justice Knutson concluded:

"It is simply impossible for a court to instruct on or a jury to deal with the legal inconsistency created where in the same trial the representative of a decedent technically occupies positions as both plaintiff and defendant. The presumption of due care of a decedent rests on the theory that the love of life ordinarily will cause a person to exercise due care for his own safety. How is any jury of lay people going to understand that a decedent has such a love of life as to exercise due care when his trustee sues to recover for his death but that he did not have the same love of life when the representative of his estate is sued for his negligence? *As long as § 602.04 remains as part of our statutory law, cases in which a trustee of a decedent sues to recover for his death should not be consolidated with cases in which the representative of the estate of the same decedent is sued as a defendant. It is true that the outcome of such litigation will then sometimes depend on who gets to trial first, but even that is better than what we have now.*" 261 Minn. 125, 111 N.W.2d 351 (Emphasis supplied.)

In our subsequent decision in *Lustik v. Rankila*, 269 Minn. 515, 131 N.W.2d 741 (1964), we said " * * * as long as Minn.St. 602.04 remains on the books, litigants will continue to find themselves burdened with duplicated litigation and with the necessity for maneuvering for the tactical advantage of being the first to trial." 269 Minn. 517, 131 N.W.2d 743.[5] See, also, *Schwalich v. Guenther*, 282 Minn. 504, 505, note 1, 166 N.W.2d 74, 76 (1969). As long as Minn.St. 602.04 remains in effect, there can be no consolidation of actions which arise from a single occurrence and which place the decedent in two inconsistent and contradictory postures.

2. The next issue we consider is whether failure to consolidate cases of this nature

**5.** Because of the statutory presumption of the decedent's due care, there can be no trial consolidation of cases of this nature and the first case served and filed is the first tried. If the action for wrongful death is filed and tried first and the mandatory instruction given pursuant to Minn.St. 602.04, the survivor is bound by the doctrine of collateral estoppel in his subsequently tried negligence suit against the administrator of the decedent's estate. In the event the survivor wins the race to the courthouse and his negligence suit is tried first, he is not affected by the statutory presumption which applies only in "any action to recover damages for negligently causing the death of a person." Thus, there is an advantage to each party in having his case tried first. See, *Lambach v. Northwestern Refining Co. Inc.*, 261 Minn. 115, 111 N.W.2d 345 (1961), and *Lustik v. Rankila*, 269 Minn. 515, 131 N.W.2d 741 (1964).

for trial causes undue prejudice to the survivor because of the effect of collateral estoppel in a subsequent negligence suit brought by the survivor, when the issue of the negligence of the parties has been litigated and determined in a previous wrongful-death action.

The doctrine of collateral estoppel may be used as an affirmative defense where the issue presented has already been determined in a previous lawsuit, even though the former suit was based on a totally different cause of action. It differs from the bar of res judicata where a former judgment operates to preclude a second suit based on the same cause of action. *Gollner v. Cram,* 258 Minn. 8, 102 N.W.2d 521 (1960). See, *Shimp v. Sederstrom,* 305 Minn. 267, 233 N.W.2d 292 (1975); *The Travelers Insurance Co. v. Thompson,* 281 Minn. 547, 163 N.W.2d 289 (1968), appeal dismissed, 395 U.S. 161, 89 S.Ct. 1647, 23 L.Ed.2d 175 (1969).

In *Lustik v. Rankila, supra,* we held that a previous verdict awarding damages to the trustee on behalf of a deceased driver's heirs in a wrongful-death action, in which the decedent had been given the benefit of the presumption of due care, had established the negligence of the surviving driver, Mrs. Lustik, and barred her claim for personal injuries in a subsequent suit against the administrator of the deceased driver's estate. Since Mrs. Lustik was a party to both suits, she could be estopped on the issue of her negligence in the second suit even though the doctrine of collateral estoppel was invoked defensively by the administrator of the decedent's estate who had not been a party to the wrongful-death action.

Noting the disadvantage to Mrs. Lustik in the wrongful-death suit where she could appear only in a defensive posture, and in which the decedent had the benefit of the presumption, Justice Thomas Gallagher stated in his dissent:

"* * * She had there no opportunity to litigate her affirmative claims without the statutory presumption embodied in § 602.04 against her. She was without

authority to interpose a counterclaim or to present her claims for injuries in a consolidated trial of the two cases. She lacked completely the opportunity of establishing decedent's liability under evidentiary rules not 'stacked' against her. * * *

"* * * While other cases cited in the majority opinion give expression to the general rules governing estoppel by verdict in ordinary situations, none of them relate to the exceptional procedural questions presented here." 269 Minn. 528, 131 N.W.2d 749.

Justice Robert Sheran also dissented, arguing that an adjudication of the defendant surviving driver's liability in a wrongful-death action should not bar a subsequent assertion by the surviving driver of his claim for damages resulting from the accident against the administrator of the decedent's estate, and that the surviving driver should be entitled to a relitigation of the issue of negligence when the wrongful-death action is tried first. He explained:

"Estoppel by verdict facilitates the administration of justice in preventing relitigation by one party of a fact issue previously decided against him fairly. To apply this rule when the adverse determination was reached, or *possibly* reached, because of a principle of law applicable only because the plaintiff in the prior action for damages for wrongful death is given preferential treatment by reason of our statute does not serve this purpose.

* * * * * *

"* * * [T]he residual effect of the presumption is to influence decision as to the negligence of both drivers.

"The unfairness of the situation which follows from the application of the statute in favor of the plaintiff only in an action for death by wrongful act seems evident." 269 Minn. 529, 131 N.W.2d 750.

It is evident that the burden imposed on the survivor in a wrongful-death suit where he is subjected to the disadvantage and prejudice of the statutory presumption operates to affect his subsequent negligence

suit, even though the statute does not mandate that the presumption be used in the second trial in which the decedent's estate is the defendant. By application of the doctrine of collateral estoppel to the issue of the survivor's negligence in the subsequent suit, the presumption of due care is not restricted to the wrongful-death action, as specified by Minn.St. 602.04, but infects the suit which follows. Thus, a determination of the relative negligence of the parties in a wrongful-death suit where the decedent is benefited by the presumption as plaintiff becomes binding through estoppel by verdict on the subsequent suit where the decedent is in the posture of a defendant, a result not intended by the legislature.

 3. The final issue raised is whether Minn.St. 602.04 is an unconstitutional denial of equal protection to survivors in wrongful-death suits in light of the enactment of the comparative negligence statute, Minn.St. 604.01. Minn.St. 604.01, subd. 1, provides in pertinent part:

> "*Contributory negligence shall not bar recovery in an action by any person* or his legal representative to recover damages for negligence resulting in death or in injury to person or property, *if such negligence was not as great as the negligence of the person against whom recovery is sought,* but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering. *The court may, and when requested by either party shall, direct the jury to find separate special verdicts determining the amount of damages and the percentage of negligence attributable to each party*; and the court shall then reduce the amount of such damages in proportion to the amount of

negligence attributable to the person recovering." (Emphasis supplied.) [6]

As Justice Sheran observed in his dissent in *Lustik* 5 years before the enactment of the comparative negligence statute:

> "In my opinion, the statutory presumption of due care does not relate exclusively to the issue of the decedent's negligence. It does so in form, but not in substance or practical effect.

> "An instruction which permits a jury to presume due care on the part of one automobile driver, * * * necessarily affects the jury's evaluation of the other driver's conduct. * * * [T]he process which eliminates the conduct of one as causative inevitably casts responsibility on the others." 269 Minn. 529, 131 N.W.2d 750.

In *Steinhaus v. Adamson,* 294 Minn. 387, 201 N.W.2d 264 (1972), decided after the passage of the comparative negligence statute, we recognized the inherent conflict between Minn.St. 602.04 and 604.01 when we said:

> " * * * [I]f a case is submitted on a special verdict under our comparative negligence law and the jury finds decedent was more than 50 percent to blame for the collision, can the court still order judgment for decedent on the presumption alone? To ask the question, it seems to us, is to answer it. A construction of the presumption statute which would permit the trustee of decedent to recover 100-percent damages even if decedent was more than 50 percent to blame would lead to such an absurd result that it would destroy our comparative negligence law.

> Thus, not only may the trustee for a decedent's heirs successfully recover damages even though the decedent was negligent, but the jury is fully informed of the effect of its answers to the percentage of negligence questions and has knowledge of which answers will allow the decedent's heirs to recover and which answers will not.

---

**6.** Rule 49.01(2), Rules of Civil Procedure, provides: "In actions involving Minn.Stat.1971, Sec. 604.01, the court shall inform the jury of the effect of its answers to the percentage of negligence question and shall permit counsel to comment thereon, unless the court is of the opinion that doubtful or unresolved questions of law, or complex issues of law or fact are involved, which may render such instruction or comment erroneous, misleading or confusing to the jury."

"We have not dealt with the effect of this presumption since adoption of our comparative negligence statute, but it is evident from the language of § 602.04 that the presumption is a rebuttable one; else, there would be nothing for the jury to pass on as the statute requires.

"It would be much better if the statute were repealed." 294 Minn. 396, 201 N.W.2d 270.

It is clear from the language of the comparative negligence statute that a determination that the conduct of one driver involved in a two-car collision was a cause of the accident must inevitably decrease the percentage of negligence attributable to the other driver since the total percentage of liability for both must equal 100 percent. Thus, the statutory presumption favoring the decedent in a wrongful-death action casts the burden of a greater percentage of negligence upon the survivor through the jury's apportionment of the relative percentages of negligence to each, despite evidence to the contrary. Further, as we have noted above, the collateral estoppel effect of this verdict is binding on the survivor in his subsequent negligence suit as well, even though the decedent in the second case is not entitled to any presumption of due care.

Minn.St. 602.04 makes a distinction between decedents and survivors in actions for wrongful death giving the presumption of due care to one and not to the other. The question we must determine is whether that legislative classification is constitutionally valid or whether it is a denial of equal protection to survivors in suits against them for wrongful death. In *Schwartz v. Talmo,* 295 Minn. 356, 205 N.W.2d 318, appeal dismissed, 414 U.S. 803, 94 S.Ct. 130, 38 L.Ed.2d 39 (1973), we set forth the standards for consideration of whether a legislative classification may be found constitutionally valid with respect to those who are excluded from its benefits and protection:

" * * * In considering any legislation which is attacked as a denial of equal protection, we apply certain guiding principles which have evolved from many of our cases. The rule is that legislative classification will be held to be constitutionally valid if—

"(1) the classification uniformly, without discrimination, applies to and embraces all who are similarly situated with respect to conditions or wants justifying appropriate legislation;

"(2) *the distinctions which separate those who are included within the classifications from those who are excluded are not manifestly arbitrary or fanciful, but are genuine and substantial so as to provide a natural and reasonable basis in the necessity or circumstances of the members of the classification to justify different legislation* adapted to their peculiar conditions and needs; and

"(3) the classification is germane or relevant to the purpose of the law; that is, there must be an evident connection between the distinctive needs peculiar to the class and the remedy or regulations therefor which the law purports to provide." 295 Minn. 362, 205 N.W.2d 322. (Emphasis supplied.)

We will not declare an act of the legislature unconstitutional unless we are satisfied, after careful consideration, that it is in conflict with some provision of the state or Federal constitution. *Elwell v. County of Hennepin,* 301 Minn. 63, 221 N.W.2d 538 (1974).

The purpose of the equal protection clause is to secure to every person the right to be free from arbitrary and intentional discrimination. When a classification is not unreasonable or arbitrary, the legislature may determine that the classification has a reasonable relation to a governmental purpose. *Johnson v. Donovan,* 290 Minn. 421, 188 N.W.2d 864 (1971). Under these circumstances, courts should not interfere in the absence of palpable error. However, where there is not a sufficient distinction between two classes of persons to justify applying rules to one class not applicable to the other, and where that distinction is

without substantial or reasonable basis,[7] then we must find that it is a denial of equal protection to the class to which it does not apply. See, 3B Dunnell, Dig. (3 ed.) § 1669; *Minneapolis Federation of Teachers v. Obermeyer,* 275 Minn. 347, 147 N.W.2d 358 (1966).

■ Minn.St. 602.04 not only discriminates against all of those who survive an occurrence resulting in a death and are sued in actions for wrongful death, but also is overbroad in that it is inclusive of decedents who are negligent, as demonstrated by the evidence, as well as those who are not negligent at all. See, *Eisenstadt v. Baird,* 405 U.S. 438, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972).

The question for our determination then is whether there is some reasonable basis to support the different treatment accorded decedents and survivors under Minn.St. 602.04. While we have in the past found that the statute was reasonable in light of our former law of contributory negligence, we cannot find a rational basis for its existence when we view its operation in conjunction with the law of comparative negligence which, as we have stated, allows the decedent's trustee to recover even though there may be negligence on the part of the decedent. In our judgment this change in the law destroys any reasonable basis for the class distinction since it is no longer true that the decedent may not recover if there is any negligence whatever on his part.

Therefore, we now hold that it is unreasonable and arbitrary to attribute to a class of decedents a *mandatory* presumption that each was in the exercise of due care at the time of his death when that same presumption is not available to the survivor. To find a love of life only in the part of the decedent in a wrongful-death suit but not by the survivor defies logic and reason.

After a careful consideration of the effects of the mandatory presumption on the allocation of negligence to the respective parties in a wrongful-death action pursuant to our comparative negligence law, as well as the subsequent effect of estoppel by verdict on the survivor, we hold that Minn.St. 602.04 is an unconstitutional denial of equal protection to those survivors against whom a wrongful-death action is brought.

■ Henceforth, as a result of our decision, an action for wrongful death brought by a trustee for the decedent's heirs, and a negligence action by a survivor against the decedent's estate, may be consolidated for trial since no instruction concerning statutory presumption of the decedent's exercise of due care need be given. Where applicable, the common-law presumption shall be applied in lawsuits tried in Minnesota after the issuance date of this opinion.

Reversed and remanded for a consolidated trial.

TODD, Justice (concurring specially).

I concur in the result for the reasons set forth in my dissenting opinion in *Steinhaus v. Adamson,* 294 Minn. 387, 397, 201 N.W.2d 264, 271 (1972).

---

7. It is clear that the class distinction in this case does not fall into the "fundamental rights" or "suspect criteria" categories which require a higher level of state interest to sustain. See, *Davis v. Davis,* 297 Minn. 187, 210 N.W.2d 221 (1973).